In the Matter of BROGDON INVEST-MENT COMPANY, Debtor.

ROYAL TRUST BANK, N. A., f/k/a Royal Trust Bank of Miami, N. A., Plaintiff,

v.

BROGDON INVESTMENT COMPANY, INC., and Hugh F. Lambert Construction Company, a/k/a Hugh F. Lambert Co., Defendants.

Bankruptcy No. 81–05303A.
Adv. No. 82–1141A.

United States Bankruptcy Court, N. D. Georgia.

June 29, 1982.

Alfred S. Lurey, Kilpatrick & Cody, Atlanta, Ga., for plaintiff.

Gus H. Small, Jr., Small & Stamps, Atlanta, Ga., for Brogdon Inv. Co.

G. Allen Broxton, Telford, Stewart & Stewart, Gainesville, Ga., for Hugh F. Lambert Const. Co.

## MEMORANDUM OF OPINION

A. D. KAHN, Bankruptcy Judge.

A consolidated trial and hearing was held beginning on June 3, 1982, on the Complaint for Relief from Stay and the Motion to Dismiss the Chapter 11 case. After hearing the evidence and considering applicable law, the court makes the following findings of fact and conclusions of law.

The real estate in Gwinnett County that is the subject of the controversy was formerly owned by M. Nelson Brogdon, Sr., now deceased. The property had been in his family for many years. Mr. Brogdon was approached by a Miami developer, who represented some California investors. The developers proposed building a shopping center on the property. An agreement about the proposed development was reached. Mr. Brogdon leased the property to Allied American Properties of Florida, Inc. ("Allied"). Construction financing was obtained and permanent long-term financing for the shopping center was sought.

To finance construction, Allied entered into a Construction Loan Agreement with Royal Trust Bank of Miami, N. A. ("Bank"). Under that agreement Bank agreed to lend certain sums of money to Allied to construct a shopping center on the property. The Bank received a promissory note ("Note") dated December 20, 1979, in the stated principal amount of $2,800,000.00, executed by Allied, Robert Schönfeld and Nancy Schonfeld in favor of Bank in connection with the Construction Loan Agreement. As security for repayment of the Note, Bank received, *inter alia*, a Security Deed and Agreement ("Security Deed") dated December 20, 1979, executed by Allied and M. Nelson Brogdon, Sr., in favor of Bank, and an Assignment of Subleases, Rents, and Profits, dated December 20, 1979, executed by Allied in favor of Bank. Both the Note and the Security Deed were subsequently modified. The modification is not in dispute. It is important to note that the Brogdon interests were subordinated to Bank's interest in the property.

A shopping center known as the Hilltop Village Shopping Center was constructed on the property that is the subject of the Security Deed. The shopping center development was never sufficiently completed and leased so as to create the cash flow required by the permanent financier, and the permanent loan was never closed. The obligors on the Note went into default. Allied is now defunct. The Brogdon interests, none of which are liable on the Note, took over the management of the shopping center.

Meanwhile, Mr. Brogdon died. At least part of the Brogdon interest became tied up in a trust. On December 4, 1981, Bank notified the makers of the Note and the representatives of Mr. Brogdon's estate that the entire indebtedness represented by the Note was accelerated to maturity, that the attorney's fees provisions in the Note would be enforced as provided by law, and that the shopping center would be sold under power of sale contained in the Security Deed on January 5, 1982. The Brogdon interests were thus faced with imminent foreclosure and were then unable to stop it, since there was no entity that could file bankruptcy.[1] Therefore, Brogdon Investment Company, Inc., ("Brogdon Investment") was formed in accordance with Georgia law. The Brogdon interests in the shopping center were transferred to Brogdon Investment. Brogdon Investment filed for relief under Chapter 11 of the Code and effectively stopped foreclosure.

At one point during the Chapter 11 proceedings, it appeared that Brogdon Investment had a prospective purchaser of the shopping center, that would satisfy the debt owing Bank. According to the debtor, that purchaser, Shopping Center Development Corporation, reneged on the contract.[2] Except for that one glimmer of hope, Bank has been adversely affected by the pendency of the Chapter 11 proceedings. The property is yielding only $20,000 to $24,000 a month in rental income, with a resulting shortfall in the interest due the bank under the terms of the Note of almost $30,000 per month. Interest is accruing at a rate that is four percentage points above the prime rate. The balance due under the Note is approaching $3.6 million, including attorney's fees.

Evidence presented by the Bank showed that, based on a pure present net income of $266,102 generated by the shopping center, the value of the property is $1.7 million. The appraiser, however, adjusted this value because of certain out parcels of land, as yet undeveloped, but saleable or leaseable, to $2.75 million. At present the property is not fully leased, and, as already stated, is not yet fully completed. If completion is undertaken, at a cost of approximately $210,000, the value of the property would increase, if fully leased. Under present cir-

---

1. A trust may not be a debtor. *See, e.g.,* 11 U.S.C. § 109.

2. Brogdon Investment initiated suit in this court as a result of the alleged breach. *See*

*Brogdon Investment Company, Inc. v. Shopping Center Development Corp. and Bill Frederick (In re Brogdon Investment Co., Inc.)* Case No. 82–1457A (B.Ct.N.D.Ga.1982).

cumstances, marketing the property would take months. It is apparent that today the property is worth less than the amount of the construction loan plus the interest that is accruing under the terms of the Note.

Mr. Milton Brogdon, Jr., testified on behalf of the debtor. He is a full-time, career employee of the telephone company. He testified that he has no money to invest in the property, and that he has no intention of doing so. Current maintenance of the property is being funded by the rental income from Bank.

The other party defendant in the stay litigation, Hugh F. Lambert Construction Company ("Lambert"), built the shopping center. Lambert has a contractor's lien against the property. It filed a counterclaim praying for judgment against Bank in the amount of Eighty Seven Thousand Six Hundred One and 01/100 ($87,601.01) Dollars with interest from the date of the completion of said shopping center; in the alternative, that it have judgment against Plaintiff, Royal Trust Bank, decreeing that the lien of Defendant Lambert is superior to the lien of the Bank and other lienholders; that the stay be lifted to allow Lambert to proceed with foreclosure of Lambert's contractor's lien in accordance with Georgia law; that the proceeds of such foreclosure be applied to the satisfaction of said lien; and that Bank be restrained from instituting any foreclosure against the property pending the trial of the issues.

In the stay litigation Bank contends that it holds a first priority, fully perfected lien on, security title to and security interest in the shopping center and the property, and that the facts, including the value of the property and the interest accruing under the Note, entitle it to relief from the stay.

DISCUSSION OF THE ISSUES

■ First, it is apparent that the Bank is entitled to relief from the stay, and that the stay should be terminated to permit the Bank to sell the Shopping Center under the sale under power in the Security Deed. The debtor has no equity in the improved realty. Its interest is subordinated to the Bank's interest in the property. Important-

ly, the Bank's interest in the property is not being adequately protected, inasmuch as the interest accruing under the terms of the Note is far in excess of the rental income presently generated by the property. Finally, the value of the Bank's interest as Grantee under the Security Deed will continue to diminish until the property development is completed and the property is realizing its full income potential. The debtor has not offered to improve the income-producing capacity of the property. Immediate sale of the property and satisfaction of the Bank's lien is unlikely. For these reasons, the stay should be lifted.

There also appears to be no reason why the stay should not be lifted as to Lambert, so that it might proceed to pursue its remedies in state court.

■ Finally, the court concludes that lifting the stay will render the remaining issues raised in Lambert's counterclaim *moot* in these proceedings, since the debtor will no longer have an interest in the outcome of litigation involving the property. Bank and Lambert should settle their differences in state court.

The next question is raised by Bank's motion to dismiss, which was based on Bank's contention that the petition was filed in bad faith and that it constituted an imposition upon the jurisdiction of this court. These contentions are without merit. The debtor has not acted in bad faith and there has been no abuse of the jurisdiction of the bankruptcy court. Brogdon Investment is an entity that may be a debtor under 11 U.S.C. § 109. However, sufficient cause has been shown to warrant dismissal of the Chapter 11 case at this stage of the proceedings.

The bankruptcy case was commenced on December 16, 1981. No plan has been filed. At one time it appeared that the debtor had a realistic chance to reorganize, but the prospective purchaser's offer did not pan out.

Lifting the stay will permit Bank to sell the improved realty under the power of sale in the Security Deed. The interest of the

debtor in the realty will be foreclosed. There will be no more going concern that would benefit from reorganization. There will be no assets remaining in the estate requiring administration, with the exception of two lawsuits that the debtor recently filed in this court.[3]

 Equally important is the fact that, apart from some tax claims against the property, the debtor has no substantial debt. Four creditors are listed on the schedules as having unsecured claims without priority. Two of these are law firms currently representing the debtor in these proceedings. Milton N. Brogdon, Jr., president and shareholder of the debtor, holds a claim for $200.00. Finally, Landers, Turner & Company, P. C., is scheduled as having a claim in the amount of $1,740.70. There is simply nothing to reorganize, no creditors to benefit from the administration of the estate in this court, and no reason to continue the reorganization. In summary, dismissal will be in the best interest of creditors and the estate. For these reasons, the case should be dismissed pursuant to 11 U.S.C. § 1112.

An appropriate order and judgment is entered contemporaneously herewith.

### ORDER AND JUDGMENT

In accordance with the reasoning set forth in the accompanying Memorandum of Opinion,

IT IS HEREBY ORDERED AND ADJUDGED that the automatic stay of 11 U.S.C. § 362(a) be terminated so as to permit Royal Trust Bank of Miami, N.A., to sell the Shopping Center that is the subject of this litigation under the sale under power in the Security Deed; and that

Said stay be further terminated to allow Hugh F. Lambert Construction Company to proceed with foreclosure of its Contractor's lien in accordance with the law of Georgia, and to pursue other remedies in state courts or other courts of competent jurisdiction as it sees fit; and, other issues raised by Hugh

F. Lambert Construction Company in its counterclaim be DISMISSED WITHOUT PREJUDICE AS MOOT in these bankruptcy proceedings; and

That *In re Brogdon Investment Company, Inc.,* Case No. 81–05303A, be DISMISSED pursuant to 11 U.S.C. § 1112; and

That the Clerk be directed to file this Order and Judgment and the accompanying Memorandum of Opinion in both of the above-styled cases.

IT IS SO ORDERED.

---

**3.** *See* footnote 2, *supra.* The other case filed by the debtor is *Brogdon Investment Co., Inc.*

*v. Schonfeld (In re Brogdon Investment Co., Inc.)* Case No. 82–1458A (B.Ct.N.D.Ga.1982).